Paul K. Nutall and Tiffany L. Nutall
5208 N. 10th St., Suite 5033
McAllen, TX 78504
Telephone: (310) 997-5403 (voicemail required)
Alternate: (310) 997-5385 (voicemail required)
Email: paul@2ndchancesaveslives.org
        tiffany@2ndchancesaveslives.org

Plaintiffs, Pro se

Case: 1:26−cv−10230
Assigned To : McMillion, Brandy R.
Referral Judge: Morris, Patricia T.
Assign. Date : 1/21/2026
Description: CMP− NUTALL, ET AL
V. BAY COUNTY, ET AL (CS)

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

PAUL K. NUTALL and
TIFFANY L. NUTALL

            Plaintiffs,

    vs.

BAY COUNTY, MICHIGAN;
18TH CIRCUIT COURT FOR BAY
COUNTY; BAY COUNTY FRIEND
OF THE COURT; BAY COUNTY
CLERK OF COURT; MICHIGAN
ATTORNEY GENERAL'S OFFICE,
CHILD SUPPORT ENFORCEMENT
DIVISION; MELANIE MAY,
Attorney General; GENTRY
SHELBY, Special Agent, Attorney
General's Office; ABIGAIL
GARLICK, Friend of the Court
Officer; AARON HETHERINGTON,
Court-Appointed Counsel (former);
JOHN/JANE DOES 1–50,

            Defendants.

Case No.:

**CIVIL ACTION**

**COMPLAINT FOR VIOLATIONS OF:**

• 18 U.S.C. §§ 1962(c) and 1962(d)
• 42 U.S.C. § 1983
• Fourth Amendment to the United States Constitution
• Fourteenth Amendment to the United States Constitution
• State-Law Claims for Abuse of Process, Obstruction of Justice, and
  Intentional Infliction of Emotional Distress

**[JURY TRIAL DEMANDED]**

Name of Judicial Officer:
Courtroom Number:
Date & Time of Hearing:

1

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ........................................................ **4**

II. PARTIES ...........................................................  **4**

III. CAPACITY STATEMENT .............................................. **8**

IV. JURISDICTION AND VENUE ......................................…........ **8**

V. ANTICIPATED IMMUNITY DEFENSES AND PLAINTIFFS' RESPONSE ............ **8**

    Defendant-Specific Responses .........................................…........  **10**

VI. SEVERABILITY OF CLAIMS AND RELIEF ..............................…........... **13**

VII. CLARIFICATION REGARDING FEDERAL JURISDICTION (NOT A

DOMESTIC-RELATIONS ACTION) .....................................……........  **13**

VIII. NATURE OF THE CASE .....................................…........ **14**

IX. CASE EVOLUTION AND ENFORCEMENT HISTORY OVERVIEW ............... **15**

X. FACTUAL ALLEGATIONS ...........................................…........ **20**

    A. Absence of Lawful Arrearage Adjudication .........................…..........  **21**

    B. Failure to Credit Incarceration and Counsel's Lack of Due Diligence ...............  **22**

    C. Denial of Notice and Opportunity to Be Heard ............................…......  **22**

    D. Creation of an "Absconding" Narrative Without Evasion .........................  **23**

    E. Unlawful 2024 Case Generation and Enforcement Escalation ...........…..….......  **24**

    F. March 2025 Governor's Warrant Threats and Coercive Payment Demands (May /

Shelby / Garlick) .......................................….......…..............  **25**

    G. Absence of Lawful Extradition Authority and Custodial Jurisdiction ...............  **26**

    H. Clerk Obstruction, Retaliation, and Denial of Court Access ............…..….......  **27**

    I. Resulting Harm and Causal Connection ...........................…..…........  **30**

**XI. PRESERVATION OF EVIDENCE** ……………………………..…….....… 31

**XII. ENTERPRISE ALLEGATIONS (RICO)** …………………..…………… 31

    **A. The Enterprise** …………………………………………………… 31

    **B. Conduct and Participation in the Enterprise** ………………….………… 33

    **C. Pattern of Racketeering Activity** …………………………….……..…34

**XIII. CAUSES OF ACTION (COUNTS)** …………………………………… 35

    **COUNT I — Civil RICO (18 U.S.C. § 1962(c))** ……………………… 36

    **COUNT II — RICO Conspiracy (18 U.S.C. § 1962(d))** ……………………… 37

    **COUNT III — § 1983 Unlawful Seizure (Fourth Amendment)** …………………..……… 38

    **COUNT IV — § 1983 Due Process (Fourteenth Amendment)** ………………..……… 39

    **COUNT V — Abuse of Process** ……………………………………….. ……….. 39

    **COUNT VI — Obstruction of Justice / Denial of Access to Courts** …………..……… 40

    **COUNT VII — Intentional Infliction of Emotional Distress** ………….. ………..…… 40

**XIV. DAMAGES** …………………………………………………… 41

**XV. DEMAND FOR JURY TRIAL** …………………………………….……… 45

**XVI. PRAYER FOR RELIEF** …………………………………….….…… 45

**XVII. CERTIFICATION AND SIGNATURE** ……………………………....… 48

## I. INTRODUCTION

This is a civil rights and racketeering action arising from a prolonged pattern of unlawful child-support enforcement, misuse of probation and extradition authority, and coercive interstate detention carried out under color of law by Bay County, Michigan officials, state enforcement agents, and associated actors. Over the course of more than a decade, Defendants repeatedly asserted enforcement authority they did not possess, recycled defective child-support and probation theories, and used threats of arrest, detention, and Governor's Warrants to compel payment and submission without due process.

Plaintiffs allege that Defendants engaged in coordinated acts including unlawful interstate transport without extradition authority, ex parte creation and enforcement of alleged arrearages without notice, misuse of probation and absconding-bond procedures after jurisdiction had terminated, obstruction of court access and filings, and coercive enforcement threats despite known defects in authority. These acts resulted in repeated unlawful detentions, deprivation of liberty, emotional and financial harm, and ongoing fear of re-arrest, all without lawful adjudication.

This action seeks relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, 42 U.S.C. § 1983, and related federal law to redress systemic abuses of authority, prevent further unlawful enforcement, and hold Defendants accountable for coordinated conduct that deprived Plaintiffs of constitutional rights under color of law.

## II. PARTIES

1. **Plaintiffs Paul K. Nutall and Tiffany L. Nutall** are individuals proceeding without counsel and appear *pro se* in this action pursuant to 28 U.S.C. § 1654. Plaintiffs provide their contact information in the signature block below and request that all notices, filings, and communications be served directly upon them.

2. **Plaintiff Paul K. Nutall** is a natural person and citizen of the State of Texas. He is the primary subject of the child-support, probation, extradition, and enforcement actions described herein and brings this action *pro se* to redress violations of his constitutional and statutory rights.

3. **Plaintiff Tiffany L. Nutall** is a natural person and citizen of the State of Texas. She is the lawful spouse of Paul K. Nutall and holds a valid Durable Power of Attorney authorizing her to assist with filings, research, service, compliance, and litigation support in the underlying matters. Tiffany L. Nutall suffered direct and independent injuries caused by Defendants' conduct, including obstruction of filings, emotional distress and family disruption arising from detention threats and incarceration of her spouse, financial losses and out-of-pocket expenses, reputational harm, and ongoing fear of renewed enforcement escalation. These injuries are personal to Tiffany L. Nutall and establish standing for her claims and requests for declaratory and injunctive relief.

4. **Defendant Bay County, Michigan** is a municipal entity organized under the laws of the State of Michigan and is responsible for the policies, customs, practices, training, supervision, and oversight of its courts, clerks, Friend of the Court operations, and child-support enforcement functions. Bay County is a "person" subject to suit under 42 U.S.C. § 1983 and 18 U.S.C. § 1964.

5. **Defendant 18th Circuit Court for Bay County, Michigan** is the state trial court of general jurisdiction that presided over the divorce, child-support, probation, and related enforcement proceedings at issue. The Court acted through its judges, clerks, and administrative personnel, including the Clerk of Court, and is named for purposes of declaratory and injunctive relief and for establishing enterprise participation, policy enforcement, and institutional conduct.

6. **Defendant Bay County Clerk of Court** is the county office responsible for docketing, filing, service, record maintenance, and public access to court records for the 18th Circuit Court and related divisions. This Defendant acted through its elected Clerk, deputy clerks, supervisors, and agents, including clerks assigned to the 18th Circuit Court, and is responsible for the filing irregularities, refusals, delays, misrouting, and record manipulation described herein.

7. **Defendant Bay County Friend of the Court (FOC)** is a county agency responsible for child-support accounting, enforcement, case coordination, and interstate communications. The FOC acted through its officers and agents and participated in the creation, maintenance, and enforcement of administratively generated arrearages without lawful adjudication.

8. **Defendant Michigan Attorney General's Office – Child Support Enforcement Division** is a state agency responsible for prosecuting and coordinating child-support enforcement actions, including interstate communications and enforcement threats. The Office acted through its Assistant Attorneys General, special agents, and employees under color of state law.

9. **Defendant Melanie May**, upon information and belief, is an attorney employed by or authorized to act on behalf of the Michigan Attorney General's Office, including the Child Support Enforcement Division. At all relevant times, Defendant May acted under color of state law and exercised governmental authority in connection with child-support enforcement actions directed at Plaintiffs, including communications and actions relating to alleged arrearages, warrants, interstate enforcement, and threats of extradition.

10. **Defendant Gentry Shelby**, at all relevant times, acted under color of state law as a Special Agent of the Michigan Attorney General's Office and communicated enforcement threats directly to Plaintiffs, including threats involving warrants and interstate consequences.

11. **Defendant Abigail Garlick**, at all relevant times, acted under color of state law as a Bay County Friend of the Court officer involved in arrearage accounting, enforcement determinations, incarceration credit admissions, and case-consolidation communications.

12. **Defendant Aaron Hetherington** was appointed as counsel for Plaintiff Paul K. Nutall in or about 2021. While acting under color of state law as court-appointed counsel, he failed to provide notice of hearings, failed to pursue incarceration credits despite explicit requests, failed to withdraw in a timely manner, and remained listed as counsel of record in a manner that obstructed Plaintiff's filings and access to court proceedings.

13. **Defendants John and Jane Does 1–50** are unknown individuals, including but not limited to clerks, supervisors, enforcement agents, contractors, private transporters, and officers, who participated in, authorized, ratified, facilitated, or failed to prevent the unlawful acts described herein. Plaintiffs will amend this Complaint to identify these Defendants upon discovery.

## III.  CAPACITY STATEMENT

14. Plaintiffs sue the individual Defendants, including but not limited to Melanie May, Gentry Shelby, Abigail Garlick, Aaron Hetherington, and John/Jane Does 1–50, in their individual capacities for actions taken under color of state law that violated Plaintiffs' constitutional and statutory rights. Plaintiffs also sue appropriate Defendants in their official capacities for purposes of obtaining prospective declaratory and injunctive relief to prevent ongoing unlawful enforcement, obstruction of court access, unlawful interstate restraint, and continuing deprivation of rights.

## IV. JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. § 1331** (federal question jurisdiction), **18 U.S.C. § 1962** (Civil RICO), **42 U.S.C. § 1983**, and **28 U.S.C. § 1343** (civil-rights jurisdiction).

16. This Court has authority to grant declaratory and injunctive relief pursuant to **28 U.S.C. §§ 2201–2202**.

17. Venue is proper in this District under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District, and Defendants reside in or conduct official business in this District.

## V. ANTICIPATED IMMUNITY DEFENSES AND PLAINTIFFS' RESPONSE

18. Plaintiffs anticipate that Defendants will assert immunity defenses, including but not limited to Eleventh Amendment sovereign immunity, judicial immunity, quasi-judicial immunity, absolute prosecutorial immunity, qualified immunity, and governmental

immunity under state law, in an effort to avoid accountability for the coordinated misconduct alleged herein.

19. Plaintiffs deny that any immunity doctrine applies as a blanket bar to this action. Plaintiffs allege continuing constitutional violations, unlawful enforcement escalation, obstruction of court access, and interstate restraint carried out without lawful jurisdiction, notice, service, adjudication, or extradition authority.

20. Plaintiffs further allege that many of the acts described in this Complaint were administrative, ministerial, retaliatory, coercive, and ultra vires (beyond lawful authority), and therefore fall outside the scope of absolute immunity doctrines that may apply only to legitimate judicial or prosecutorial functions.

21. Plaintiffs seek prospective declaratory and injunctive relief to prevent ongoing and future unlawful enforcement actions, including continued threats of arrest, detention, extradition escalation, and obstruction of access to courts. Immunity doctrines do not foreclose prospective relief to stop continuing violations of federal law and constitutional rights.

22. Plaintiffs also bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and seek relief under 18 U.S.C. § 1964, based on enterprise-wide conduct affecting interstate commerce and causing injury to Plaintiffs' liberty, property, finances, and constitutional rights. Plaintiffs allege Defendants' coordinated conduct cannot be immunized where it consists of unlawful acts taken without jurisdiction and without due process.

**Defendant-Specific Responses**

23.  Defendant Bay County, Michigan is a municipal entity and is not entitled to Eleventh Amendment sovereign immunity. Bay County is a "person" subject to suit under 42 U.S.C. § 1983 and may be held liable where unconstitutional acts were caused by official policy, custom, practice, or deliberate indifference in training and supervision. Plaintiffs allege a longstanding pattern of enforcement escalation, systemic obstruction, and coordinated misuse of enforcement mechanisms sufficient to support municipal liability and enterprise participation.

24. Defendant 18th Circuit Court for Bay County, Michigan may attempt to assert Eleventh Amendment immunity by claiming it is an arm of the State. Plaintiffs deny that such immunity warrants dismissal of this action in whole or bars Plaintiffs' requests for prospective declaratory and injunctive relief to prevent continuing unconstitutional enforcement practices, reliance on void proceedings, and ongoing deprivation of due process and liberty interests.

25. Defendant Bay County Friend of the Court ("FOC") may attempt to invoke sovereign immunity or quasi-judicial immunity by characterizing its conduct as court-related enforcement activity. Plaintiffs deny immunity applies where Defendants acted without lawful jurisdiction, without lawful adjudication of arrearages, and through administrative practices that substituted for required court process. Plaintiffs allege the FOC participated in the creation, maintenance, and enforcement of administratively generated arrearages without due process, and escalated enforcement through recycled case theories, thereby acting outside lawful authority.

26. Defendant Bay County Clerk of Court may attempt to invoke quasi-judicial immunity. Plaintiffs deny that quasi-judicial immunity applies to ministerial duties and

administrative conduct, including filing, docketing, issuing file-stamped copies, maintaining records, and providing public access to court filings. Plaintiffs allege retaliatory and selective obstruction of filings, improper routing of pleadings for pre-docket review, delayed processing, backdating, and selective invocation of "counsel of record" as a barrier to court access, all of which constitute non-judicial and ministerial misconduct not protected by immunity.

27. Defendant Michigan Attorney General's Office – Child Support Enforcement Division may attempt to assert Eleventh Amendment sovereign immunity as a State agency. Plaintiffs acknowledge that damages claims against State agencies may be contested, but Plaintiffs seek prospective declaratory and injunctive relief to prevent continuing unconstitutional enforcement threats, coercive escalation, and ongoing deprivation of rights. Plaintiffs further allege coordinated interstate enforcement actions undertaken without lawful authority and without due process.

28. Defendant Melanie May, acting under color of state law as an attorney for the Michigan Attorney General's Office, may attempt to claim absolute prosecutorial immunity. Plaintiffs deny absolute immunity applies to administrative enforcement threats, coercive interstate enforcement communications, and participation in enforcement escalation absent lawful jurisdiction or valid process. Absolute immunity is limited to legitimate advocacy functions and does not protect administrative, retaliatory, or ultra vires conduct undertaken outside lawful authority. At minimum, Plaintiffs seek prospective relief to prevent continuing violations.

29. Defendant Gentry Shelby, acting under color of state law as a Special Agent of the Michigan Attorney General's Office, is not entitled to absolute immunity. To the extent

Shelby asserts qualified immunity, Plaintiffs allege Shelby participated in coercive enforcement threats and interstate escalation affecting Plaintiffs' liberty without lawful authority, valid jurisdiction, or due process. Plaintiffs allege violations of clearly established constitutional rights, including the right to be free from unreasonable seizure and detention without lawful process.

30. Defendant Abigail Garlick, acting under color of state law as a Friend of the Court officer, may attempt to invoke quasi-judicial immunity or qualified immunity. Plaintiffs deny immunity applies where Garlick participated in administrative enforcement actions not grounded in lawful adjudication, including arrearage accounting misconduct, enforcement escalation, and continuation of coercive enforcement despite known jurisdictional and due-process defects. Plaintiffs further allege ongoing harm and continuing threats requiring prospective relief.

31. Defendant Aaron Hetherington, appointed as counsel in the 2019 matter, may argue he is not a state actor for purposes of 42 U.S.C. § 1983. Plaintiffs allege that Hetherington's continued listing as counsel of record—despite abandonment, failure to communicate, and failure to withdraw—was used as a procedural barrier to Plaintiffs' filings and participation, enabling court access obstruction and enforcement escalation. Plaintiffs further allege enterprise participation and coordinated conduct sufficient to proceed to discovery.

32. Defendants John and Jane Does 1–50 may attempt to assert immunity defenses depending on their roles. Plaintiffs deny immunity applies categorically where Doe Defendants participated in unlawful restraint, private transport, enforcement escalation, obstruction of court access, retaliatory filing practices, or other ultra vires conduct undertaken without

12

lawful jurisdiction, extradition authority, or due process. Immunity is fact-dependent and cannot be resolved as a blanket matter at the pleading stage where Plaintiffs have alleged coordinated misconduct and continuing violations requiring discovery.

33. Accordingly, Defendants' anticipated immunity defenses do not warrant dismissal of this action in whole or in part, and Plaintiffs respectfully request that this Court deny any immunity-based dismissal as to claims seeking prospective declaratory and injunctive relief, claims based on ministerial obstruction and administrative misconduct, claims arising from ultra vires enforcement actions, and claims against non-state municipal entities and individual actors acting outside lawful authority.

## VI.  SEVERABILITY OF CLAIMS AND RELIEF

34. Plaintiffs request that, to the extent the Court finds any particular claim, remedy, or Defendant is limited by immunity or other defenses, the Court preserve and allow all remaining claims and remedies to proceed. Plaintiffs specifically request that the Court permit all surviving claims for prospective declaratory and injunctive relief, and all claims based on administrative, ministerial, retaliatory, coercive, and ultra vires conduct undertaken without lawful authority, jurisdiction, or due process. Plaintiffs further request that any dismissal, if granted as to any Defendant or theory, be limited narrowly and not operate as a blanket dismissal of the enterprise conduct and constitutional violations alleged herein.

## VII. CLARIFICATION REGARDING FEDERAL JURISDICTION (NOT A DOMESTIC-RELATIONS ACTION)

35.  Plaintiffs do not ask this Court to calculate child support, modify custody, alter parental rights, or issue a domestic-relations decree. Plaintiffs' claims do not seek appellate review of a state divorce judgment.

36. Instead, Plaintiffs seek relief for violations of federal constitutional and statutory rights arising from unlawful enforcement practices, unlawful interstate restraint and detention threats, denial of notice and meaningful opportunity to be heard, and obstruction of court access undertaken under color of law.

37. Plaintiffs' claims arise from Defendants' misuse of enforcement authority and continuing deprivation of federal rights, and Plaintiffs seek prospective declaratory and injunctive relief to prevent ongoing and future unconstitutional enforcement actions based on void, jurisdictionally defective, or unlawfully recycled proceedings.

## VIII.  NATURE OF THE CASE

38. This action arises from a sustained and coordinated course of conduct in which Defendants enforced alleged child-support and probation obligations without lawful adjudication, relied on ex parte orders issued without notice or service, and continued enforcement after jurisdiction had terminated.

39. Defendants repeatedly used defective or closed cases as the basis for new enforcement actions, including the creation of new case numbers, issuance of warrants, absconding-bond allegations, and interstate detention, without initiating new lawful proceedings or providing Plaintiffs with notice and an opportunity to be heard.

40. Plaintiff Paul K. Nutall was subjected to unlawful arrest, interstate transport, detention, and incarceration based on enforcement theories that lacked extradition authority, valid

jurisdiction, or lawful service. These actions included transport by private contractors without a Governor's Warrant, detention under recycled enforcement theories, and repeated threats of renewed arrest.

41. Plaintiff Tiffany Nutall was directly harmed by Defendants' conduct through obstruction of filings, denial of court access, financial loss, emotional distress, disruption of family life, and the burdens imposed by assisting Plaintiff Paul Nutall in navigating unlawful enforcement actions while acting under Durable Power of Attorney.

42. Defendants' actions were not isolated errors or negligence, but part of an enterprise-wide practice involving county agencies, state officials, enforcement personnel, and associated actors who acted in concert to maintain leverage, extract payment, and perpetuate enforcement authority after lawful jurisdiction had ended.

43. As a result of this coordinated conduct, Plaintiffs suffered repeated deprivations of liberty, violations of due process, financial and reputational harm, emotional distress, and ongoing fear of unlawful detention, forming the basis for Plaintiffs' claims under RICO, § 1983, and related federal law.

## IX. CASE EVOLUTION AND ENFORCEMENT HISTORY OVERVIEW

44. This action arises from a series of interrelated child-support, probation, and enforcement proceedings that were repeatedly initiated, dismissed, merged, revived, or administratively repurposed without lawful re-adjudication, notice, or service, and which collectively formed the basis for unlawful enforcement actions spanning more than two decades.

45. The enforcement history begins with an alleged child-support matter initiated in 2002, proceeds through a dismissed 2009 case and a 2010 divorce judgment expressly reflecting no arrearages, and culminates in successive criminal and quasi-criminal enforcement actions in 2013, 2019, and 2024 that relied on recycled enforcement theories rather than newly initiated, lawfully adjudicated proceedings.

46. Plaintiff Paul K. Nutall's federal supervised release term of three (3) years concluded in or about 2013. Shortly thereafter, Michigan authorities initiated a 2013 felony nonsupport prosecution, marking the first post-federal assertion of criminal enforcement tied to alleged child-support arrearages—despite the absence of any lawful post-divorce adjudication establishing arrears.

47. Following Plaintiff's unlawful interstate transport from Texas to Michigan without a Governor's Warrant, Plaintiff was incarcerated for approximately six (6) months and placed on probation in the 2013 matter. Probation supervision was thereafter transferred pursuant to the Interstate Compact for Adult Offender Supervision ("ICAOS") from Michigan to Texas and subsequently to California.

48. An official ICAOS Case Closure Notice dated May 4, 2015 reflects that Texas supervision was closing due to the approved transfer to California and that Michigan no longer retained supervisory authority as of that date.

49. Notwithstanding this loss of jurisdiction, Michigan issued a bench warrant on May 18, 2015—fourteen (14) days after the ICAOS closure notice—asserting enforcement authority Michigan no longer possessed.

50. After probation supervision was formally terminated on or about March 10, 2019, Michigan nevertheless generated a new felony case bearing a 2019 case-year designation.

51. Court records reflect that no substantive enforcement activity occurred in the 2019 matter until January 26, 2021, when bond-related and bind-over actions were recorded— demonstrating a substantial enforcement gap inconsistent with a newly initiated prosecution supported by contemporaneous probable cause, service, or charging instruments.

52. In or about 2021, Defendant Aaron Hetherington was appointed as counsel for Plaintiff in the 2019 case. From the outset of this appointment, Plaintiffs experienced systemic failures of notice attributable to both appointed counsel and the Bay County Clerk's Office. During this period, Plaintiff expressly requested that counsel pursue incarceration credits known to exist; those requests were ignored.

53. While Defendant Hetherington remained counsel of record, an in-person trial was scheduled despite counsel's knowledge that Plaintiffs lacked the financial means to travel to Michigan and had previously appeared remotely by Zoom without objection.

54. For at least one of the zoom hearings, Plaintiff Paul Nutall appeared remotely and waited in the Zoom waiting room for approximately thirty (30) minutes but was never admitted into the hearing. After the waiting period, the presiding judge appeared and stated, "Your attorney will explain everything to you." No explanation was ever provided.

55. Hearings were scheduled without proper notice to Plaintiff, including hearings at which Plaintiff's presence was required. Plaintiff repeatedly requested that counsel withdraw due to persistent communication failures. Despite these requests, Plaintiff was not provided notice of the November 22, 2021 motion-to-withdraw hearing or the subsequent adjourned hearing—hearings Plaintiff would not have missed had notice been properly provided.

56. This exclusion—combined with lack of notice of prior hearings and refusal to allow remote participation—was later used as the factual predicate for labeling Plaintiff as non-compliant and advancing an "absconding" narrative. The alleged "missed" hearings were not the result of evasion, but of counsel abandonment, public defender and clerk notice failures, and judicial exclusion.

57. The absconding-bond theory did not arise from a new criminal complaint or newly adjudicated obligation. Rather, it flowed directly from the procedural failures described above—failures not attributable to Plaintiff but instead caused by systemic denial of notice, denial of participation, and reliance on the continued appearance of counsel who had effectively abandoned representation.

58. In 2024, a new case number was generated (Case No. 2410300FY1), purportedly based on an absconding-bond theory. This case was not supported by any new initiating complaint, independent probable-cause determination, or lawful service.

59. Court records further reflect that the absconding-bond allegations in the 2024 case did not arise from a new offense but instead flowed directly from the same underlying nonsupport enforcement theory and the same procedural defects associated with the 2019 case.

60. No lawful reinitiation occurred. The 2024 case functioned as an escalation mechanism—reissuing enforcement authority under a new identifier to bypass jurisdictional defects, laches, and due-process violations that had already tainted the prior proceedings.

61. The following factual allegations set forth specific acts and omissions by Defendants that caused and perpetuated these unlawful enforcement actions. The following summary

provides a chronological overview of the related proceedings and enforcement actions that form the factual foundation for Plaintiffs' claims:

| Year | Case No. | Court / Jurisdiction | Nature of Case | Status / Procedural Irregularities |
|------|----------|----------------------|----------------|------------------------------------|
| 2002 | 2002-007733-DS | Bay County Circuit Court | Alleged child support | - Later merged into subsequent proceedings without re-adjudication or notice; alleged arrearages never independently adjudicated following initiation. |
| 2009 | 2009-000007072 | Bay County Circuit Court | Child support | - Dismissed within approximately three (3) months of filing; despite dismissal, a child-support ledger was later generated in the MiChildSupport system without a sustaining order. |
| 2010 | 09-7273-DM | Bay County Circuit Court | Divorce | - Judgment of Divorce (July 13, 2010), Amended Judgment (Sept. 13, 2010), and Friend of the Court Final Report (Nov. 20, 2009) reflected no judicially adjudicated arrearages; however, the Amended Judgment contained handwritten Friend of the Court notations referencing continued child-support enforcement and incorporation of an alleged child-support order derived from a separate ex parte petition to incorporate arrears, despite the absence of any attached child-support order, service, notice, hearing, or judicial adjudication. No enforceable arrearage order was entered, yet arrearages were later treated as valid and enforceable in violation of due process. |
| 2013 | 13-10134-FH | Bay County Circuit Court | Felony — CHILD SUPPORT – FAILING TO PAY (750165); probation | - Plaintiff unlawfully extradited from Texas without a Governor's Warrant; probation supervision later transferred under ICAOS from Michigan to Texas and thereafter to California, terminating Michigan's supervisory authority; bench warrant nevertheless issued on May 18, 2015, fourteen (14) days after ICAOS closure notice |

| Year | Case No. | Court / Jurisdiction | Nature of Case | Status / Procedural Irregularities |
|---|---|---|---|---|
| **2019** | 2019-0000010185-FH | Bay County Circuit Court | CHILD SUPPORT – FAILING TO PAY (750165); later absconding bond | - **Case utilized without lawful re-initiation, service, or new adjudication.** Court records reflect no contemporaneous initiating complaint, judicial probable-cause determination, or lawful notice preceding enforcement activity. The bond and subsequent absconding allegations arose only after Plaintiff was deemed to have "failed to appear" for proceedings for which proper notice was not provided and in which remote participation was denied despite prior practice. The absconding-bond theory did not arise from a new offense, but flowed directly from prior defective child-support and probation enforcement actions that were jurisdictionally void, dismissed, transferred, or closed. |
| **2024** | 2410300FY1 | Bay County Circuit Court | Absconding bond | - New case number generated from prior enforcement theories without new initiating process, judicial findings, or service; functioned as an escalation mechanism to revive defective enforcement authority and led directly to Plaintiff's February 2025 twelve-day detention in Hidalgo County, Texas. |

**Note:** Multiple enforcement actions relied on administrative ledgers and procedural assumptions rather than contemporaneous judicial findings, evidencing systemic substitution of administrative practice for lawful adjudication.

## X. FACTUAL ALLEGATIONS

**A. Absence of Lawful Arrearage Adjudication**

**(Foundational Jurisdictional Defect)**

62. At no time following the 2010 Judgment of Divorce did any Michigan court lawfully adjudicate child-support arrearages through notice, service, an evidentiary hearing, or judicial findings.

63. The Judgment of Divorce (July 13, 2010), Amended Judgment (September 13, 2010), and the Friend of the Court Final Report (November 20, 2009) reflected **no adjudicated arrearages**.

64. Although the Amended Judgment of Divorce contained handwritten Friend of the Court notations referencing continued child-support enforcement and the incorporation of a purported child-support order, no such order was attached to the judgment, entered on the Register of Actions, served upon Plaintiff, or otherwise made part of the court record. The Bay County Clerk of Court has since confirmed that no attachments or incorporated child-support orders exist in the official court file. Under Michigan Court Rule 2.602, a judgment is effective only as entered, and documents that are not formally entered, served, or docketed cannot be incorporated by reference or enforced. Any subsequent attempt to assert or enforce child-support obligations based on a nonexistent, unentered, or later-claimed attachment violates fundamental due-process requirements and is void as a matter of law.

65. The handwritten notations were expressly identified as **clerical and transcription corrections only**, not substantive amendments, and therefore could not lawfully create, revive, or adjudicate arrearages.

66. Nevertheless, Defendants later treated administratively generated ledgers and merged case data as if they constituted valid judicial determinations, forming the false foundation for subsequent criminal charges, warrants, probation actions, and interstate detention.

## B. Failure to Credit Incarceration and Counsel's Lack of Due Diligence

67. Plaintiff's periods of incarceration were known to the Friend of the Court, the prosecuting authorities, and to court-appointed counsel.

68. Plaintiff expressly requested that Defendant Aaron Hetherington pursue incarceration credits and correct the arrearage calculations, as such credits would materially affect the alleged enforcement basis.

69. Defendant Hetherington failed to investigate, pursue, or secure incarceration credits despite repeated requests, despite having access to the relevant records, and despite the credits being mandatory under Michigan law.

70. Incarceration credits totaling approximately thirteen (13) months were not applied until March 2025—more than a decade later—when Defendant Abigail Garlick issued a letter retroactively crediting time that should have been applied years earlier.

71. This delayed crediting demonstrates systemic negligence, deliberate indifference, or willful disregard in arrearage accounting, and further establishes that prior enforcement actions were based on materially false financial representations.

## C. Denial of Notice and Opportunity to Be Heard

## (Counsel Abandonment and Court Exclusion)

72. Beginning in or about 2021, after Defendant Hetherington was appointed as counsel in the 2019 case, Plaintiffs experienced repeated failures of notice attributable to both appointed counsel and the Bay County Clerk's Office.

73. Hearings were scheduled without proper notice to Plaintiff, including hearings at which Plaintiff's presence was requested or required.

74. Plaintiff repeatedly requested that Defendant Hetherington withdraw as counsel due to persistent communication failures, yet withdrawal proceedings were scheduled without proper notice to Plaintiff.

75. Plaintiff was not notified of the initial motion-to-withdraw hearing, which he would not have missed had notice been properly given, and was similarly not notified of subsequent related hearings.

76. In at least one hearing, Plaintiff appeared remotely and waited in the Zoom waiting room for approximately thirty (30) minutes but was never admitted.

77. After this exclusion, the presiding judge appeared and stated, "Your attorney will explain everything to you," despite Plaintiff's attorney having abandoned communication and despite Plaintiff receiving no explanation or opportunity to be heard.

78. These actions deprived Plaintiff of meaningful participation in proceedings affecting his liberty, legal status, and alleged compliance, in violation of due process.

## D. Creation of an "Absconding" Narrative Without Evasion

79. Plaintiff did not abscond, evade supervision, or willfully fail to appear.

80. Any alleged non-appearance resulted from lack of notice, exclusion from hearings, and reliance on counsel who failed to communicate, failed to withdraw, and failed to protect Plaintiff's procedural rights.

81. Defendants nevertheless labeled Plaintiff as non-compliant and relied on that false narrative to justify bond forfeiture, absconding allegations, and escalating enforcement actions.

82. The absconding-bond theory did not arise from a new criminal offense, but from procedural failures and jurisdictionally defective proceedings not attributable to Plaintiff.

**E. Unlawful 2024 Case Generation and Enforcement Escalation**

83. In 2024, Defendants generated a new case number (Case No. 2410300FY1) purportedly based on an absconding-bond theory.

84. This case was initiated **without** a new criminal complaint, **without** a contemporaneous probable-cause determination, and **without** lawful service.

85. The absconding-bond allegation was derivative of the same defective child-support and probation enforcement theories underlying the 2019 case.

86. The new case identifier functioned as an escalation mechanism—reissuing enforcement authority under a fresh number to bypass jurisdictional defects, laches, and due-process violations that had already tainted the prior proceedings.

87. The 2024 case directly led to Plaintiff's February 2025 detention in Texas, despite the continued absence of lawful extradition authority or valid underlying jurisdiction.

## F.  MARCH 2025 GOVERNOR'S WARRANT THREATS AND COERCIVE PAYMENT DEMANDS (MAY / SHELBY / GARLICK)

88. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

89. Plaintiffs allege that in March 2025, Defendants Melanie May (Michigan Attorney General enforcement attorney), Gentry Shelby (Special Agent), and Abigail Garlick (Bay County Friend of the Court Interstate Child Support Case Manager) engaged in coordinated enforcement escalation involving threats of a Governor's Warrant, coercive payment demands, and threats of interstate arrest and detention consequences, rather than lawful adjudication and due process.

90. On or about March 19, 2025, Defendant Melanie May, acting under color of state law on behalf of the Michigan Attorney General's Office, threatened enforcement escalation through a Governor's Warrant and demanded payment under coercive circumstances. Plaintiffs allege this threat was made to compel payment through fear of arrest and interstate detention rather than through lawful process and constitutionally required notice and hearing.

91. During the same March 19, 2025 telephone call, Plaintiff Paul K. Nutall pleaded with Defendant May to accept an immediate partial payment and allow a structured payment plan for the remaining balance. Defendant May refused to accept Plaintiff's request for a payment plan and communicated, in substance, that Plaintiff would not be permitted to resolve the matter through incremental payments and would instead face incarceration-based enforcement pressure unless full payment was made.

92. During that call, Defendant May stated, in substance and effect, that if Plaintiff did not pay, she would keep the interstate warrant active against him and that Plaintiff would go to jail. Defendant May further stated, in substance, that if she could not obtain a Governor's Warrant, Plaintiff would be released after approximately ninety (90) days, and that she could then "stroke a pen" and have Plaintiff put back in jail again until he paid the child support, conveying these statements in a threatening and coercive manner.

93. Plaintiffs allege Defendant May's statements communicated that incarceration and repeated re-incarceration would be used as leverage to compel payment, rather than resolving any disputed enforcement issues through lawful adjudication and constitutionally required notice and opportunity to be heard.

94. Defendant May further stated, in substance, "people like you never pay your child support," conveying the statement in a demeaning and prejudicial manner. Plaintiffs allege this statement reflected bias, animus, and an improper enforcement motive, and that Defendant May used her official authority to intimidate Plaintiff and pressure payment through threats of incarceration and enforcement escalation rather than lawful adjudication and due process.

95. On or about March 25, 2025, Defendant Gentry Shelby, acting under color of state law as a Special Agent of the Michigan Attorney General's Office, initially contacted Plaintiffs regarding what Plaintiffs understood to be an Inspector General complaint and related oversight concerns.

96. On or about March 27, 2025, Defendant Shelby returned Plaintiffs' call and stated, in substance, that the Michigan Attorney General would not accept Plaintiffs' proposed upfront payment and payment plan, and that enforcement escalation would continue,

including threats involving a Governor's Warrant. Plaintiffs allege Shelby's

communication was coercive and was used to pressure Plaintiffs into immediate payment

under fear of interstate arrest and detention.

97. On March 20, 2025, Defendant Abigail Garlick issued a written letter on Bay County

Friend of the Court letterhead regarding File #2009-7273-DM, acknowledging that a

credit was given "from 4/30/2009 through 5/26/2010 for the incarceration time period,"

totaling approximately thirteen (13) months of incarceration credit. The letter further

states: "You were advised by the Attorney General's office that you can pay the case

balance in full, surrender yourself for arraignment on the charges, or await the

Governor's Warrant."

98. Plaintiffs allege that this letter confirms that Defendants, including the Michigan

Attorney General's Office, used the threat of a Governor's Warrant as a coercive

enforcement tool tied to payment demands, even while acknowledging substantial

incarceration credit and ongoing enforcement accounting defects.

99. Plaintiffs further allege that the Governor's Warrant threats by Defendants May, Shelby,

and Garlick were made in the context of continuing jurisdictional and due process

defects, and were used to intimidate and coerce Plaintiffs through fear of arrest,

detention, and interstate restraint, rather than through lawful adjudication.

100. Plaintiffs allege these threats caused immediate and continuing harm, including fear of

renewed arrest, inability to travel freely, emotional distress, financial injury, and the

necessity of emergency defensive actions to prevent unlawful detention and escalation.

**G. Absence of Lawful Extradition Authority and Custodial Jurisdiction**

101.  Defendants' enforcement actions and interstate detention of Plaintiff were premised on the existence of lawful extradition authority and custodial jurisdiction. No such authority existed.

102.  On January 8, 2026, the Michigan State Police ("MSP") formally invoked an extension under MCL 15.235(2)(d) in response to Plaintiffs' Freedom of Information Act request, stating that additional time was required to determine the existence of responsive records relating to extradition or interstate custody.

103.  On January 20, 2026, following that extended search period, MSP issued a written determination stating that **no responsive records existed**, and provided statutory appeal rights, reflecting a completed and substantive agency determination.

104.  The MSP's absence-of-records determination confirms that **no Governor's Warrant, extradition authorization, or MSP-coordinated interstate custody existed** in connection with Plaintiff Paul K. Nutall.

105.  Separately, the Michigan Department of Corrections ("MDOC") issued written FOIA responses confirming that it possessed **no records of accepting custody, authorizing extradition, or receiving Plaintiff through any lawful interstate transfer mechanism**.

106.  The Texas Governor's Office likewise confirmed in writing that **no Governor's Warrant was issued** in connection with Plaintiff at any time relevant to the alleged extradition or interstate detention.

107.  These independent determinations by MSP, MDOC, and the Texas Governor's Office collectively establish that Plaintiff's interstate transport and detention occurred **without**

**lawful extradition authority**, **without executive approval**, and **without custodial jurisdiction**, rendering the detention unconstitutional and void.

## H. Clerk Obstruction, Retaliation, and Denial of Court Access

108.  Between May and August 2025, the Bay County Clerk's Office accepted, file-stamped, and returned Plaintiffs' pro se filings without objection, establishing a consistent filing practice.

109.  In November 2025, after Plaintiffs notified the Clerk's Office of improper handling of filings—including forwarding motions to chambers before docketing—the Clerk abruptly changed course.

110.  On the same day Plaintiffs notified the Clerk of these violations, an order was issued declining to rule on Plaintiffs' pro se motions on the asserted basis that counsel remained on record.

111.  This sudden invocation of "counsel of record" status was inconsistent with the Clerk's prior acceptance of pro se filings for months and constituted selective enforcement and retaliation.

112.  Filings were delayed, backdated, and improperly processed, and Plaintiffs were denied timely file-stamped copies despite full compliance with filing requirements.

113.  These actions obstructed Plaintiffs' access to the courts and prevented timely judicial review of unlawful enforcement actions.

## I. Resulting Harm and Causal Connection

114.  As a direct and proximate result of Defendants' acts and omissions, Plaintiff was subjected to unlawful detention, interstate restraint, reputational harm, emotional distress, financial loss, and deprivation of constitutional rights.

115.  Defendants' conduct reflects a continuing pattern of enforcing obligations through procedural manipulation, administrative fabrication, and coercive escalation rather than lawful adjudication.

116.  Plaintiffs further allege that Defendants knew, or should have known, that Plaintiff Paul K. Nutall was vulnerable to severe emotional distress from coercive arrest and extradition threats. In the underlying divorce matter, Plaintiff Paul K. Nutall previously submitted a letter to the court in or about 2010 stating that he was not in the best mental state, placing Defendants and the court system on notice of his mental and emotional condition. Despite this notice, in March 2025 Defendants escalated threats of a Governor's Warrant and interstate arrest in a manner that caused serious and foreseeable harm to Plaintiffs. Following these threats, Plaintiff Paul K. Nutall experienced severe anxiety, inability to sleep, extreme stress, and worsening depression requiring increased medication. Plaintiffs further allege that Plaintiff Paul K. Nutall experienced acute anxiety with heart palpitations and breathing difficulty, requiring emergency assistance. Plaintiffs also allege that the distress became so severe that Plaintiff Paul K. Nutall expressed suicidal ideation to his wife, including statements that he wished he were dead and that someone would shoot him in the head. Plaintiffs allege these harms were proximately caused or substantially worsened by Defendants' coercive enforcement escalation and intimidation tactics.

## XI.  PRESERVATION OF EVIDENCE

117.  Plaintiffs reasonably anticipate that relevant evidence exists within Defendants' custody, possession, or control, including but not limited to MiChildSupport ledger records, Friend of the Court accounting and enforcement records, warrant records, Register of Actions history, filing and docketing logs, clerk routing records, internal court communications, Zoom hearing logs and access records, probation and ICAOS communications, interstate enforcement communications, and records reflecting the existence or nonexistence of lawful extradition authorization.

118.  Plaintiffs request that Defendants preserve all such evidence, including electronically stored information ("ESI"), metadata, audit trails, system access logs, recordings, and communications, because such materials are material to Plaintiffs' claims and defenses and necessary to establish the full scope of coordinated enterprise conduct, unlawful enforcement escalation, and deprivation of constitutional rights alleged herein.

## XII. ENTERPRISE ALLEGATIONS (RICO)

### A. The Enterprise

119.   At all relevant times, Defendants constituted an **associated-in-fact enterprise** within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise").

120.   The Enterprise included, but was not limited to:

(a) **Bay County, Michigan**;

(b) the **18th Circuit Court for Bay County**;

(c) the **Bay County Friend of the Court**;

(d) the **Bay County Clerk of Court**;

31

(e) the **Michigan Attorney General's Office – Child Support Enforcement Division**;

(f) Assistant Attorney General **Melanie May**;

(g) Special Agent **Gentry Shelby**;

(h) Friend of the Court Officer **Abigail Garlick**;

(i) Court-appointed counsel **Aaron Hetherington**;

(j) unidentified clerks, supervisors, enforcement agents, contractors, and **private transporters** acting as **John/Jane Does 1–50**.

121.    The Enterprise had a **common purpose**: to continue child-support and probation-related enforcement against Plaintiff Paul K. Nutall through **coercive, punitive, and extrajudicial means**, irrespective of jurisdictional authority, lawful adjudication, notice, or due process, and to extract compliance or payment through threats of arrest, detention, interstate transport, and extradition.

122.    The Enterprise pursued this purpose by **treating administratively generated arrearages as judicially adjudicated**, reviving closed or transferred cases, generating new case identifiers to bypass defects, and invoking enforcement mechanisms—such as warrants, absconding bonds, and Governor's Warrant threats—without lawful foundation.

123.    The Enterprise exhibited **relationships among members** through shared access to court and enforcement systems, coordinated communications, reliance on the continued appearance of counsel of record despite abandonment, and reciprocal acts that furthered enforcement even after jurisdiction had lapsed.

124.   The Enterprise functioned as a **continuing unit** from at least **2010 through 2025**, spanning multiple proceedings, case numbers, jurisdictions, and enforcement stages, and adapting its methods to overcome procedural and jurisdictional barriers.

## B. Conduct and Participation in the Enterprise

125.   Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) and **conducted or participated**, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

126.   Defendants conducted and participated in the Enterprise by, among other acts:

a.   **Creating and enforcing ex parte arrearages** without notice, service, hearing, or judicial findings, and treating those arrearages as enforceable criminal predicates;

b.   **Merging, recycling, and reviving case numbers** (2002, 2009, 2013, 2019, and 2024) to maintain enforcement continuity despite dismissals, transfers, or termination of supervision;

c.   **Issuing and relying upon warrants** after loss of jurisdiction, including the issuance of a bench warrant after Michigan received ICAOS notice that supervision had transferred out of state;

d.   **Labeling Plaintiff as non-compliant or absconding** based on missed hearings that resulted from lack of notice, counsel abandonment, and exclusion from proceedings rather than willful evasion;

e.   **Obstructing access to courts** by refusing or delaying filing of pro se pleadings, forwarding filings to chambers before docketing, backdating entries, and selectively

invoking "counsel of record" status only after Plaintiffs asserted procedural violations;

f.  **Coordinating interstate enforcement** actions, including detention and attempted extradition, despite the absence of a Governor's Warrant or lawful extradition authority;

g.  **Employing private transport contractors** to carry out interstate custody and restraint without lawful extradition process, thereby avoiding statutory safeguards and executive oversight;

h.  **Threatening future enforcement**, including Governor's Warrant escalation, to coerce full payment or surrender despite known jurisdictional and procedural defects.

127.   Defendant Hetherington participated in the Enterprise by **remaining listed as counsel of record despite abandonment**, failing to provide notice of hearings, failing to pursue incarceration credits after being requested to do so, and allowing his continued appearance to be used as a procedural barrier to Plaintiff's filings and participation.

128.   Defendant Clerk entities and personnel participated by **failing to perform ministerial duties**, selectively refusing filings, and engaging in retaliatory docketing practices that protected the enforcement posture of the Enterprise.

## C. Pattern of Racketeering Activity

129.   Defendants engaged in a **pattern of racketeering activity** within the meaning of 18 U.S.C. § 1961(5), consisting of multiple related acts occurring within ten (10) years and posing a threat of continued criminal conduct.

130.   Predicate acts include, but are not limited to:

a. **Mail fraud** (18 U.S.C. § 1341) and **wire fraud** (18 U.S.C. § 1343), through misleading notices, docket entries, enforcement communications, and representations regarding arrearages, warrants, jurisdiction, and counsel status;

b. **Extortion under color of official right** (18 U.S.C. § 1951), by demanding payment or surrender through threats of arrest, detention, and extradition;

c. **Obstruction of justice**, including interference with the filing, docketing, and adjudication of pleadings and motions;

d. **Kidnapping and unlawful restraint**, through private interstate transport and detention without lawful extradition authority;

e. **Deprivation of rights under color of law**, including unlawful seizure, detention, and denial of due process.

131.   These acts were **related** in that they shared common victims, purposes, methods, and participants, and were **continuous**, constituting both **closed-ended continuity** (a series of related acts over many years) and **open-ended continuity** (a regular way of conducting the Enterprise's affairs that poses a threat of repetition).

132.   As a direct and proximate result of Defendants' racketeering conduct, Plaintiffs suffered loss of liberty, emotional distress, reputational harm, economic loss, and deprivation of constitutional rights.

## XIII. CAUSES OF ACTION (COUNTS)

## COUNT I

### Civil RICO – Substantive Violation

### 18 U.S.C. § 1962(c)

(Against All Defendants)

133.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

134.   At all relevant times, Defendants were employed by, associated with, or conducted and participated—directly or indirectly—in the conduct of the affairs of an associated-in-fact enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

135.   The enterprise affected interstate commerce by, inter alia, asserting and enforcing Michigan-originating warrants, probation actions, child-support enforcement, and absconding-bond allegations across state lines, including Texas and California.

136.   Defendants knowingly conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, within the meaning of 18 U.S.C. §§ 1961(1) and 1962(c), consisting of multiple related and continuous predicate acts within a ten-year period, including but not limited to:

   a.   **Mail fraud and wire fraud** (18 U.S.C. §§ 1341, 1343), through false or misleading notices, docket entries, enforcement communications, and interstate coordination premised on nonexistent jurisdiction, nonexistent adjudications, and invalid warrants;

   b.   **Extortion under color of official right** (18 U.S.C. § 1951), by demanding payment, surrender, or compliance through threats of arrest, extradition, and Governor's Warrants despite known jurisdictional defects;

36

    c.  **Obstruction of justice** (18 U.S.C. §§ 1503, 1512), by refusing to file pleadings, delaying or backdating docket entries, routing filings to chambers for pre-filing review, and denying Plaintiffs meaningful access to the courts;

    d.  **Kidnapping and unlawful restraint** (18 U.S.C. § 1201), through private interstate transport and detention without lawful extradition authority;

    e.  **Deprivation of rights under color of law**, including unlawful seizure, detention, and denial of due process.

137.   These acts were related in purpose, victims, methods, and results, and constituted both **closed-ended continuity** (spanning at least 2010 through 2025) and **open-ended continuity**, posing an ongoing threat of continued racketeering activity.

138.   As a direct and proximate result of Defendants' violations of § 1962(c), Plaintiffs suffered concrete injury to their liberty, property, finances, reputation, family life, and constitutional rights.

## COUNT II

## RICO Conspiracy

## 18 U.S.C. § 1962(d)

(Against All Defendants)

139.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

140.   Defendants knowingly agreed, conspired, and coordinated to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

141.   Each Defendant knew the essential nature and scope of the Enterprise and knowingly agreed that a member of the conspiracy would commit at least two racketeering acts in furtherance of the Enterprise's unlawful objectives.

142.   Overt acts in furtherance of the conspiracy included, but were not limited to, issuance and enforcement of invalid warrants, creation and reuse of defective case numbers, obstruction of filings, coercive payment demands, and interstate detention without lawful authority.

143.   Plaintiffs were injured by acts taken in furtherance of the conspiracy.

## COUNT III

### Deprivation of Civil Rights – Unlawful Seizure

### 42 U.S.C. § 1983 (Fourth Amendment)

(Against All Defendants)

144.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.   At all relevant times, Defendants, acting under color of state law, caused Plaintiff Paul K. Nutall to be unlawfully seized, detained, restrained, and transported across state lines without lawful extradition authority, a valid warrant, or probable cause.

146.   Defendants asserted arrest, detention, and interstate transport authority despite the absence of jurisdiction, lawful adjudication, valid legal process, or Governor's Warrant authorization.

147.   Defendants' actions constituted unreasonable seizures and restraints of liberty in violation of the Fourth Amendment to the United States Constitution.

## COUNT IV

### Deprivation of Civil Rights – Due Process

### 42 U.S.C. § 1983 (Fourteenth Amendment)

(Against All Defendants)

148.   Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

149.   Defendants deprived Plaintiffs of protected liberty and property interests without notice, lawful service, a hearing, or a meaningful opportunity to be heard.

150.  Defendants enforced ex parte arrearages, issued warrants, generated absconding-bond allegations, and escalated enforcement actions without lawful adjudication, jurisdiction, or notice, thereby depriving Plaintiffs of procedural and substantive due process.

151.   Defendants' conduct violated Plaintiffs' procedural and substantive due-process rights under the Fourteenth Amendment to the United States Constitution.

## COUNT V

### Abuse of Process

(Against All Defendants)

152.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

153.  Defendants used judicial and administrative processes for ulterior and improper purposes, including coercion, punishment, and extraction of payment rather than lawful adjudication.

154.  Defendants misused warrants, probation mechanisms, absconding-bond allegations, and case-number recycling for improper purposes—including coercion, punishment, and

enforcement leverage—despite knowing, or recklessly disregarding, that jurisdiction and notice were lacking.

155.  Plaintiffs suffered harm as a direct result of Defendants' abuse of process.

## COUNT VI

### Obstruction of Justice / Denial of Access to Courts

(Against All Defendants)

156.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

157.  Defendants misused warrants, probation mechanisms, absconding-bond allegations, and case-number recycling for improper purposes—including coercion, punishment, and enforcement leverage—despite knowing, or recklessly disregarding, that jurisdiction and notice were lacking.

158.  These acts impeded Plaintiffs' ability to seek relief, challenge unlawful enforcement, and protect their rights.

159.  Plaintiffs suffered injury as a result of Defendants' obstructive conduct.

## COUNT VII

### Intentional Infliction of Emotional Distress

(Against All Defendants)

160.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

161.  Defendants engaged in extreme and outrageous conduct by repeatedly threatening unlawful arrest, extradition, and incarceration despite known jurisdictional defects and absence of lawful authority.

162.  Defendants' conduct was intentional or reckless and foreseeably caused severe emotional distress to Plaintiffs.

163.  Defendants acted with knowledge of Plaintiff Paul K. Nutall's documented anxiety and psychological vulnerability, exacerbating the harm inflicted.

## XIV. DAMAGES

164.  **General Allegation of Injury**

As a direct and proximate result of Defendants' acts, omissions, and coordinated misconduct described herein, Plaintiffs have suffered substantial, concrete, and continuing injuries to their liberty, property, finances, reputation, family life, and constitutional rights. These injuries were the foreseeable and intended consequences of Defendants' unlawful enforcement practices and enterprise conduct.

165.  **Loss of Liberty and Unlawful Incarceration**

Plaintiff Paul K. Nutall was unlawfully seized, transported, detained, and incarcerated on multiple occasions as a result of Defendants' conduct, including but not limited to:

a. Approximately six (6) months of incarceration following the 2013 unlawful interstate transport from Texas to Michigan without a Governor's Warrant or lawful extradition authority, carried out by private contractors rather than authorized state agents; and

b. Approximately twelve (12) days of incarceration in February 2025 at the Hidalgo County Detention Center in Texas, based on a derivative and jurisdictionally defective absconding-bond allegation issued under a newly generated Michigan case number.

41

These deprivations of liberty occurred without valid jurisdiction, lawful extradition authority, proper adjudication, or due process, and Plaintiff was not credited for significant portions of the incarceration attributable to Defendants' actions.

166. **Emotional Distress and Psychological Harm**

Plaintiffs suffered severe emotional distress, anxiety, fear, humiliation, and psychological harm arising from repeated threats of arrest, detention, and extradition, and from the constant risk of renewed incarceration.

Defendants' conduct foreseeably exacerbated Plaintiff Paul K. Nutall's documented history of anxiety and psychological vulnerability, causing ongoing fear of law-enforcement encounters, sleep disruption, emotional instability, and chronic stress. Plaintiff Tiffany Nutall likewise suffered emotional distress arising from the threat of her spouse's repeated detention, family instability, and reputational harm.

167. **Interference With Family Life and Personal Support**

Defendants' actions substantially interfered with Plaintiffs' family life, marital relationship, and mutual support. Due to outstanding warrants, absconding allegations, and fear of re-arrest, Plaintiff Paul K. Nutall was unable to travel with Plaintiff Tiffany Nutall for medically significant egg-donation retrieval procedures in June 2025 and January 2026, despite companion support being required or encouraged by the agency involved.

Plaintiff Tiffany Nutall was forced to travel alone for the first time in nearly a decade, resulting in significant emotional distress, hardship, and disruption of marital and family support during medical procedures.

168. **Economic Losses and Out-of-Pocket Expenses**

Plaintiffs incurred substantial financial losses and expenses as a result of Defendants' conduct, including but not limited to:

a.   Costs associated with unlawful detention, including commissary expenses and communication costs during Plaintiff Paul Nutall's incarceration;

b.   Repeated certified-mail filings, service expenses, copying fees, and court-related costs incurred to protect Plaintiffs' rights and attempt to access the courts;

c.   Transportation expenses necessitated by the loss of access to a vehicle following repossession in or about June 2025, requiring reliance on rideshare transportation for court- and USPS-related travel; and

d.   Additional incidental expenses caused by Defendants' repeated enforcement actions and procedural obstruction.

169. **Employment and Business Disruption**

Defendants' conduct materially disrupted Plaintiff Paul Nutall's employment prospects and business activities. The existence of warrants, absconding allegations, and online criminal listings impaired professional opportunities, deterred business travel, and required repeated explanations to business contacts and potential investors.

Defendants' actions caused Plaintiff Paul Nutall to curtail appearances, decline meetings, and limit professional engagement due to fear of arrest following the February 2025 detention, resulting in lost opportunities and diminished earning capacity.

170. **Credit Damage and Housing Instability**

Defendants' unlawful child-support enforcement and inaccurately asserted arrearages caused prolonged damage to Plaintiff Paul Nutall's credit profile. As a direct result, Plaintiffs faced heightened housing instability and financial stress and were only able to secure housing by relying on Plaintiff Tiffany Nutall's credit to offset the harm caused by Defendants' actions.

171. **Reputational Harm**

Defendants' actions resulted in lasting reputational damage to both Plaintiffs. Online criminal listings, warrant references, and third-party postings falsely portraying Plaintiff Paul Nutall as delinquent or criminal were viewed by relatives, acquaintances, and professional contacts.

These false representations damaged Plaintiffs' standing in their community, strained family relationships, and harmed Plaintiffs' professional credibility and business reputation.

172. **Loss of Procedural and Constitutional Rights**

Plaintiffs were deprived of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including:

    a. The right to be free from unreasonable seizure and detention;

    b. The right to notice and a meaningful opportunity to be heard;

c. The right to lawful extradition procedures; and

d. The right of access to the courts without obstruction or retaliation.

The deprivation of these rights constitutes an independent and compensable injury.

### 173. **Chilled Liberty, Travel, and Daily Life**

Following the February 2025 detention, Plaintiffs' daily lives were substantially restricted. Plaintiff Paul Nutall limited travel, avoided public and professional engagements, and lived under continuous fear of renewed arrest. These restrictions constitute an ongoing deprivation of liberty interests directly caused by Defendants' conduct.

### 174. **Continuing and Future Harm**

Absent judicial intervention, Plaintiffs remain at risk of renewed enforcement actions, reissuance of warrants, continued credit and reputational damage, and further unlawful detention based on recycled and defective enforcement theories. Plaintiffs face ongoing and irreparable harm unless Defendants' conduct is enjoined.

### 175. **Punitive and Exemplary Damages**

Defendants' conduct was willful, reckless, malicious, and undertaken with deliberate indifference to Plaintiffs' constitutional rights. Plaintiffs therefore seek punitive and exemplary damages to punish Defendants' misconduct, deter similar abuses of authority, and prevent future violations

## XV. DEMAND FOR JURY TRIAL

176.  Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Paul K. Nutall and Tiffany L. Nutall respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

177.    Plaintiffs seek prospective declaratory and injunctive relief against appropriate Defendants in their official capacities to prevent ongoing and future constitutional violations, including continued reliance on void warrants, unlawful enforcement escalation, interstate detention threats, extradition escalation, and obstruction of access to courts arising from jurisdictionally defective proceedings.

178.  Plaintiffs respectfully request that this Court enter declaratory relief as follows:

a)  Declaring that Defendants' acts and omissions described herein violated Plaintiffs' rights under the United States Constitution and federal law, including but not limited to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983;

b)  Declaring that the alleged child-support arrearages, probation enforcement actions, absconding-bond allegations, warrants, and related enforcement measures described herein were pursued without lawful jurisdiction, lawful adjudication, or due process, and are therefore void and unenforceable;

c)  Declaring that Defendants' use of threats of arrest, detention, and Governor's Warrant escalation as a coercive enforcement tool absent lawful authority violates due process and constitutes unlawful restraint under color of law.

179.   Plaintiffs respectfully request that this Court enter injunctive relief enjoining

Defendants, their officers, agents, employees, and all persons acting in concert with them

from:

a)   Issuing, maintaining, publishing, executing, or enforcing any warrants, absconding-

bond allegations, detainers, or enforcement actions derived from void, jurisdictionally

defective, dismissed, transferred, or unlawfully recycled proceedings;

b)   Threatening extradition, Governor's Warrant escalation, or interstate arrest and

detention consequences absent lawful authority, valid initiating process, and

constitutionally required notice and opportunity to be heard;

c)   Obstructing Plaintiffs' access to the courts through filing refusals, delayed docketing,

retaliatory processing, backdating, improper pre-docket routing of pleadings, or

selective enforcement of "counsel of record" barriers;

d)   Continuing enforcement based on administratively generated arrearages not

established by lawful adjudication through notice, service, and an evidentiary hearing;

e)   Engaging in further retaliation, intimidation, or coercive enforcement escalation

against Plaintiffs for seeking judicial relief, filing grievances, or pursuing oversight

and public-record remedies.

180.   Plaintiffs respectfully request that this Court order vacatur, correction, and

expungement of all unlawful records, warrants, entries, and public postings arising from

the challenged enforcement actions, to the extent permitted by law and consistent with

federal equitable authority.

181.  Plaintiffs respectfully request an award of compensatory damages in an amount to be proven at trial for the injuries described herein, including loss of liberty, emotional distress, financial harm, reputational damage, and other consequential damages.

182.  Plaintiffs respectfully request an award of treble damages pursuant to 18 U.S.C. § 1964(c) for injuries to Plaintiffs' business or property caused by Defendants' racketeering conduct.

183.  Plaintiffs respectfully request an award of punitive and exemplary damages against the individual Defendants to punish willful and reckless violations of Plaintiffs' constitutional rights and to deter similar misconduct.

184.  Plaintiffs respectfully request an award of costs of suit and any allowable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law, to the extent Plaintiffs retain counsel and such fees are permitted.

185.  Plaintiffs respectfully request an award of pre-judgment and post-judgment interest as allowed by law.

186.  Plaintiffs respectfully request such other and further relief as this Court deems just, proper, and equitable.

## XVII. CERTIFICATION AND SIGNATURE

Plaintiffs certify pursuant to Federal Rule of Civil Procedure 11 that to the best of their knowledge, information, and belief, formed after a reasonable inquiry, the factual contentions contained herein have evidentiary support, and the legal claims are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

**DATED:** January 20, 2026

Respectfully submitted,

Paul K. Nutall, Pro Se
5208 N. 10th Street, Suite 5033
McAllen, TX 78504
(310) 997-5385 (voicemail required)
paul@2ndchancesaveslives.org

Tiffany L. Nutall, Pro Se
5208 N. 10th Street, Suite 5033
McAllen, TX 78504
(310) 997-5403 (voicemail required)
tiffany@2ndchancesaveslives.org